Danny Friddle   A6008921
_____
Name and Prisoner/Booking Number

Saguaro Correctional Center
_____
Place of Confinement

1252 East Arica Rd.
_____
Mailing Address

Eloy, AZ  85131
_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

```
┌─────────────────────────────────┐
│  ___ FILED        ✓ LODGED       │
│  ___ RECEIVED    ___ COPY        │
│                                  │
│      SEP 1 6 2024                │
│                                  │
│   CLERK U S DISTRICT COURT       │
│   DISTRICT OF ARIZONA            │
│   BY _____ DEPUTY    │
└─────────────────────────────────┘
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Danny Friddle
_____ ,
(Full Name of Plaintiff)

                    Plaintiff,

v.

(1) TODD THOMAS
_____ ,
(Full Name of Defendant)

(2)  SHAWN WEAD
_____ ,

(3)  DEBORAH POWELL
_____ ,

(4) JODY BRADLEY
_____ ,

                    Defendant(s).

[X] Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-23-2414-PHX-KML--ESW
_____
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

[ ] Original Complaint
[ ] First Amended Complaint
[X] Second Amended Complaint

## A.  JURISDICTION

1.     This Court has jurisdiction over this action pursuant to:
            [X] 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
            [ ] 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971).
            [X] Other:  42 USC § 2000cc                                                      .

2.     Institution/city where violations occurred:  Saguaro Correctional Center, Eloy, Arizona                .

**550/555**

## B.  DEFENDANTS

1. Name of first Defendant: TODD THOMAS ("Defendant THOMAS") . The first Defendant is employed
as: Core Civic Regional Director at (overseeing) Saguaro Correctional Center .
(Position and Title)        (Institution)

2. Name of second Defendant: SHAWN WEAD ("Defendant WEAD") The second Defendant is employed as:
as: Warden at Saguaro Correctional Center .
(Position and Title)        (Institution)

3. Name of third Defendant: JODY BRADLEY ("Defendant BRADLEY") . The third Defendant is employed
as: Assistant Warden (Operations) at Saguaro Correctional Center .
(Position and Title)        (Institution)

4. Name of fourth Defendant: DEBORAH POWELL ("Defendant POWELL"). The fourth Defendant is employed
as: Assistant Warden (Programs) at Saguaro Correctional Center .
(Position and Title)        (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?  ☒ Yes   ☐ No

2. If yes, how many lawsuits have you filed? __1__ .  Describe the previous lawsuits:

   a.  First prior lawsuit:
      1.  Parties: Danny Friddle v. Todd Thomas, et. al.
      2.  Court and case number: US Dist. Court for the District of Arizona, Case # CV-23-1072-PHX-DJH–ESW .
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)  Still pending.

   b.  Second prior lawsuit:
      1.  Parties: v.
      2.  Court and case number:
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)

   c.  Third prior lawsuit:
      1.  Parties: v.
      2.  Court and case number:
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)

**If you name more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

## D.  CAUSE OF ACTION

### COUNT I

1.    State the constitutional or other federal civil right that was violated: First Amendment, actionable through 42 USC § 2000cc                                                                                          .

2.    **Count I.**   Identify the issue involved.   Check **only one.**   State additional issues in separate counts.
☐ Basic necessities          ☐ Mail                 ☐ Access to the court          ☐ Medical care
☐ Disciplinary proceedings   ☐ Property             ☒ Exercise of religion         ☐ Retaliation
☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other:_____.

3.    **Supporting Facts.**   State as briefly as possible the FACTS supporting Count I.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

1) Defendants THOMAS, WEAD, POWELL, LOPEZ, and NEWELL have prohibited the possession, and subsequently the wearing, of tzitzit and tallit by Jewish inmates in the Hawai'i population at SCC.

2) The wearing of tzitzit (also called a tallit katan) and tallit (also called a tallit gadol, or a prayer shawl) by Jewish men are mandated by the Torah, and detailed within Jewish law (specific details are contained within the Kitzer Shulchan Arukh, or "Code of Jewish Law"), to fulfill the commandment in the Torah for Jewish men to wear garments with "fringes" on the corners.

3) The Defendants named in this Count's prohibition on purchasing/possessing, and subsequently wearing, tzitzit and/or tallit means that a Jewish inmate must violate the requirement of Jewish law, thus the prohibition creates a substantial burden on Plaintiff.

4) The given reason by the Defendants named in this Count for denying tzitzit and tallit is that they present a "security issue," citing "length," but The Defendants named in this Count have not provided any actual specific security issue or threat related to the possession and wearing of tzitzit and/or tallit that distinguishes them from other items already available to inmates, to include basic clothing items available to the general population and/or religious items available to other religious groups, which include items of similar construction, and/or greater length.

4.    **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).
Plaintiff has suffered, and continues to suffer, injury by the failure to accommodate his sincerely held religious beliefs, in violation of his First Amendment Rights.

5.    **Administrative Remedies:**
   a.    Are there any  administrative  remedies  (grievance procedures or administrative appeals)  available at your institution?                                                                    ☒ Yes    ☐ No
   b.    Did you submit a request for administrative relief on Count I?          ☒ Yes    ☐ No
   c.    Did you appeal your request for relief on Count I to the highest level?  ☒ Yes    ☐ No
   d.    If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____.

## COUNT II

1.  State the constitutional or other federal civil right that was violated: <u>Fourteenth Amendment, actionable through 42 USC § 1983</u>                                               .

2.  **Count II.**   Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
    ☐ Basic necessities            ☐ Mail              ☐ Access to the court      ☐ Medical care
    ☐ Disciplinary proceedings    ☐ Property          ☐ Exercise of religion     ☐ Retaliation
    ☐ Excessive force by an officer  ☐ Threat to safety  ☒ Other: <u>Equal Protection</u>                    .

3.  **Supporting Facts.**   State as briefly as possible the FACTS supporting Count II.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

    1) Defendants THOMAS, WEAD, POWELL, LOPEZ, and NEWELL have treated Plaintiff differently from other similarly situated inmates, and thus have deprived, and continue to deprive, Plaintiff of equal protection under the laws, in violation of the Fourteenth Amendment of the United States Constitution.
    2) Plaintiff is informed and so believes that SCC inmates under the Idaho contract are permitted to purchase, and subsequently wear, tzitzit and tallit from their weekly commissary.
    3) The allowance for Idaho inmates to possess tzitzit and tallit , while within the same facility, and wherein they also intermix with Hawai'i inmates for institutional programs and facility events and activities, including religious gatherings, presents clear evidence that the denial of tzitzit and tallit for Hawai'i inmates is arbitrary rather than based on any actual security threat.
    4)  The Defendants named in this Count have barred Jewish inmates from purchasing and/or possessing a tzitzit citing that its length presents a "safety and security issue," however, they have failed to show any security related distinction between tztizit and similar items such as shirts issues by the facility and/or available through special commissary purchase.
    5)  The Defendants named in this Count have barred Jewish inmates from purchasing and/or possessing a tallit citing that its length presents a "safety and security issue," however:
        1. At least one Christian inmate was allowed to purchase a "prayer shawl" (the item in    (cont.)    .

4.  **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).
    Plaintiff has suffered, and continues to suffer, injury through the violation of his Fourteenth Amendment Rights.

5.  **Administrative Remedies:**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                          ☒ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Count II?      ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Count II to the highest level?   ☒ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.                                                                      .

## COUNT III

1.   State the constitutional or other federal civil right that was violated: First Amendment, actionable through 42 USC § 2000cc                                                                                           .

2.   **Count III.**   Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
☐ Basic necessities     ☐ Mail          ☐ Access to the court     ☐ Medical care
☐ Disciplinary proceedings   ☐ Property     ☒ Exercise of religion     ☐ Retaliation
☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other:                                                     .

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count III.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1) Defendants THOMAS, WEAD, POWELL, BRADLEY, LOPEZ, and NEWELL have denied the recognition of the observance of Sukkot, a Jewish observance required by the Torah and Jewish law, and which also includes the observances of Shemini Atzeret and Simchat Torah.

2) The mandated requirements relating to Sukkot under Jewish law include "dwelling in the sukkah," work proscriptions (for the first two days as well as for Shimini Atzeret and Simchat Torah), and "public assembly," which additionally involves prayers, readings, and rituals such as shaking the lulav, which are conducted in the sukkah (a "temporary dwelling" wherein services, rituals, and meals are conducted). A traditional celebratory holiday meal (a meal traditionally containing chicken, which is not served or provided either on the primarily TVP based kosher diet, or accommodated through items available on commissary) is also part of the observance of Simchat Torah, and is neither recognized nor provided.

3) Defendants named in this Count have failed to provide appropriate accommodations for the observance of the Jewish holiday of Sukkot by failing to provide materials and accommodations needed for such observance, including the provision of a lulav and etrog (ceremonial items), and of a sukkah, the provision of group services and work proscriptions as appropriate in accordance with Jewish law, and/or any special meals.

4) Defendants named in this Count have justified the failure to accommodate and/or provide for (cont.)                                                                                                   .

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).
 Plaintiff has suffered, and continues to suffer, injury by the failure to accommodate his sincerely held religious beliefs, in violation of his First Amendment Rights.                                                   

5.   **Administrative Remedies:**
   a.   Are there any  administrative  remedies  (grievance procedures or administrative appeals)  available at your institution?                                                                 ☒ Yes   ☐ No
   b.   Did you submit a request for administrative relief on Count III?          ☒ Yes   ☐ No
   c.   Did you appeal your request for relief on Count III to the highest level?   ☒ Yes   ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.                                                                                            
                                                                                                          .

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

Injunctive relief as may be determined appropriate based on the counts, as well as actual and punitive damages, and any other additional damages, as may be determined awarded by a jury.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ September 4, 2024 _____       _____
                DATE                                 SIGNATURE OF PLAINTIFF

_____ N/A _____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____ N/A _____
(Signature of attorney, if any)

_____ N/A _____
(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number of all pages.

5) NORMAN CARRIER

6) MARK LOPEZ

7) RUTH NEWELL

8) CARLA ROBERTSON

9) TRINITY SERVICES GROUP

10) (First name/initial unknown) PITZ

11) JUAN MONTANEZ

12) DOEs 1-20

13) CoreCivic

14) Jennifer Bechler

1-A

1 Of 15

B. Defendants (continued)

5)      Name of fifth Defendant:  NORMAN CARRIER ("Defendant CARRIER") . The fifth Defendant is employed as: Chief of Unit Management  at      Saguaro Correctional Center             .

6)      Name of sixth Defendant:  MARK LOPEZ ("Defendant LOPEZ"). The sixth Defendant is employed as: _ Chaplain           at   Saguaro Correctional Center                  .

7)      Name of seventh Defendant: RUTH NEWELL  ("Defendant NEWELL")  . The seventh Defendant is employed as:  Chaplain           at   Saguaro Correctional Center             .

8)      Name of eighth Defendant:  CARLA ROBERTSON ("Defendant ROBERTSON"). The eighth Defendant is employed as:   Mailroom supervisor   at   Saguaro Correctional Center  .

9)      Name of ninth Defendant:  Trinity Services Group ("Defendant TRINITY")   . The ninth Defendant is employed as:    the company contracted to operate the facility kitchen   at   Saguaro Correctional Center   .

10)     Name of tenth Defendant:  (first name unknown) PITZ ("Defendant PITZ"). The tenth Defendant is employed as:   kitchen supervisor  at  Saguaro Correctional Center .

11)     Name of eleventh Defendant:  Juan Montanez ("Defendant MONTANEZ"). The eleventh Defendant is employed as:  Commissary supervisor  at   Saguaro Correctional Center .

12)     Name of twelfth Defendant:  DOEs 1-5  . The twelfth Defendant is employed as:    an employee of Defendant TRINITY and a food service employee, apart from Defendant PITZ, involved in the planning, oversight, and preparation of kosher meals, [to include] apart from dietitians, whose identity(s) remains unknown to Plaintiff, and who is to be identified and amended accordingly upon discovery  at  Saguaro Correctional Center  .

13)     Name of thirteenth Defendant:  DOEs 6-10  . The thirteenth Defendant is employed as:  any dietitian(s) [not directly], whether employed by Defendant TRINITY, Core Civic, or other entity, involved in the planning and preparation of kosher meals, whose identity(s) remains unknown to Plaintiff, and who is to be identified and amended accordingly upon discovery            at        Saguaro Correctional Center .

14)     Name of  fourteenth Defendant:  DOEs 11-15 . The fourteenth Defendant is employed as:  a CoreCivic Mailroom employee, apart from Defendant ROBERTSON, involved in the return of Plaintiff's mail without notification and/or authorized disposition from the addressed and intended recipient (Plaintiff), whose identity remains unknown to Plaintiff, and who is to be identified and amended accordingly upon discovery   at  Saguaro Correctional Center .

15)     Name of fifteenth Defendant:  DOEs 16-20 . The fifteenth Defendant is employed as:  a CoreCivic Commissary employee, apart from Defendant MONTANEZ, involved in the determination of available commissary items, whose identity remains unknown to Plaintiff, and who is to be identified and amended accordingly upon discovery   at  Saguaro Correctional Center .

16)     Name of sixteenth Defendant: CoreCivic ("Defendant CORECIVIC").  The sixteenth Defendant is employed as: The corporate entity owning and operating the facility providing housing and correctional services  at  Saguaro Correctional Center.

17      Name of seventeenth Defendant: Jennifer Bechler ("Defendant BECHLER").  The sixteenth Defendant is employed as: The onsite contract monitor for the state of Hawai'i, who is responsible for ensuring contract compliance.

## Count II
Continuation

question being a Christian variation of a tallit, and, for any purpose relevant to this complaint, identical in form) from Christian Book Distributors, while Plaintiff was seeking, and being denied, approval to purchase/acquire a tallit.

B) "Native Hawaiian Religion" practitioners at SCC are allowed to purchase and possess a "lava lava," which is, in form, an item made up of a length of cloth, like a tallit, but which is larger, both in length and width, than a tallit.

C) Muslim inmates are allowed to possess "prayer rugs," which are, similarly lengths of cloth.

6)      Plaintiff is informed and believes that he is being treated differently than other similarly situated inmates housed at SCC in the denial for Jewish inmates to purchase (or receive by donation), possess, and wear Jewish religions items, Tzitzit or Tallit, as required by Jewish law, while allowing other faith groups possession and use of similar items, and/or while allowing other inmates within the facility (to include Jewish inmates under the Idaho contract, Christians under the Hawai'i and/or Idaho contracts) possession and use of the same items. This treatment is not narrowly tailored to a compelling governmental interest. Nor is there any rational basis for The Defendants named in this Count's decision to treat Plaintiff differently than other inmates. Instead, this decision is arbitrary and irrational.

## Count III
Continuation

the Jewish holiday of Sukkot by declaring that "no one else recognizes it," and "It is not a holiday that requires a meal or group service." Both claims are demonstrably false, as Sukkot is a recognized observance by the Federal Bureau of Prisons, and neither claim is narrowly tailored to the furtherance of any compelling government interest.

5)      The failure of Defendants named in this Count to accommodate the observance of Sukkot as required by Jewish law means that an observant Jewish inmate must violate his sincerely held religious beliefs, thus the prohibition creates a substantial burden on Plaintiff.

## COUNT IV

1.      State the constitutional or other federal civil right that was violated: <u>Fourteenth Amendment, actionable through 42 U.S.C. § 1983</u>.

2.      **Count IV.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail                  ☐ Access to the court      ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property              ☐ Exercise of religion     ☐ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety   ☒ Other: <u>Religious Discrimination</u>.

3.      **Supporting Facts.** State as briefly as possible the FACTS supporting Count IV. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

1.      Defendants THOMAS, WEAD, POWELL, LOPEZ, and NEWELL have treated Plaintiff differently than other similarly situated inmates housed at Saguaro Correctional Center (hereinafter "SCC"), by the failure to provide religious services for Sukkot, a Jewish holiday taking place over a total of nine days and including the observances of Shimini Atzeret and Simchat Torah, while providing similar accommodations to other faith groups. This treatment is not narrowly tailored to a compelling governmental interest. Nor is there any rational basis for the Defendants named in this Count's decision to treat Plaintiff differently than other inmates. Instead, this decision, based wholly on a religious distinction, is arbitrary and irrational.

2.      The mandated requirements under Jewish law relating to Sukkot include erecting a "sukkah" (a "temporary dwelling," set up outside, wherein services, rituals, and meals are conducted), work proscriptions (for the first two days as well as for Shimini Atzeret and Simchat Torah), and "public assembly," which involves prayers, readings, and rituals such as shaking the lulav, which are conducted in the sukkah. A traditional celebratory holiday meal (a meal traditionally containing chicken, which is not served or provided either on the primarily TVP based kosher diet, or accommodated through items available on commissary) is also part of the observance of Simchat Torah, and is neither recognized nor provided.

3.      Defendants named in this Count routinely provide all day, outdoor religious celebrations at SCC for Native Hawaiian practitioners, for Native Hawaiian holidays, some of which take place over multiple days, wherein special meals are provided to the participating Native Hawaiian practitioners.

4.      By failing to treat Plaintiff similarly to other similarly situated inmates, Defendants named within this Count have deprived, and continue to deprive, Plaintiff of equal protection under the laws, in violation of the Fourteenth Amendment of the United States

Constitution.

4.   **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff has suffered, and continues to suffer, injury through the violation of his Fourteenth Amendment Rights.

5.   **Administrative Remedies:**
    a)   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                        Yes
    b)   Did you submit a request for administrative relief on Count VIII?        Yes
    c)   Did you appeal your request for relief on Count VIII to the highest level?    Yes

# COUNT V

1.   State the constitutional or other federal civil right that was violated: First and Fourteenth Amendments, actionable through, 42 U.S.C. § 2000cc____.

2.   **Count V.**   Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
☐ Basic necessities    ☐ Mail    ☐ Access to the court    ☐ Medical care
☐ Disciplinary proceedings    ☐ Property    ☒ Exercise of religion    ☐ Retaliation
☐ Excessive force by an officer    ☐ Threat to safety    ☐ Other:_____ _____.

3.   **Supporting Facts.**  State as briefly as possible the FACTS supporting Count V.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1.   Defendants WEAD, POWELL, LOPEZ, and NEWELL have violated Plaintiff's First Amendment Rights by failing to comply with and/or accommodate the requirements of Jewish law relating to the eating of meals for Jewish inmates at Saguaro Correctional Center (hereinafter "SCC").
2.   From September 2020 until October 2022, kosher meals served at SCC were served and allowed to be taken back to inmates cells for consumption, rather than requiring them to be consumed in the chow hall. This practice facilitated/accommodated requirements Jewish law related to eating meals (ritual hand washing before meals, prayers/blessings over foods and after meals, and the prohibition against eating meat and dairy together, which prohibits even the consumption of both at the same table even by different individuals and even if the foods are otherwise kosher.) as required by Jewish law, and established both a standard for least restrictive means for accommodating those requirements, and the facility's ability to accommodate the least restrictive means in accordance with that standard.
3.   In October of 2022, the Defendants named in this Count stopped accommodating the requirements of Jewish law regarding eating meals by requiring Jewish inmates to consume kosher meals in the chow hall.
4.   The failure of the Defendants named in this Count to accommodate requirements of Jewish law related to eating meals means that an observant Jewish inmate must violate his sincerely held religious beliefs, thus the prohibition creates a substantial burden on Plaintiff.
5.   Defendants named in this Count's denial of access to a kosher eating environment, as detailed in this Count, places a substantial burden on Jewish inmates, requiring such an inmate to modify or violate his religious beliefs in order to engage in an essential part of daily life – eating – in order to partake of the meals provided by the facility.
6.   Since October 2022, and in order to comply with his sincerely held religious beliefs, Plaintiff has not eaten in the facility chow hall, but instead provided his own meals to the best of his ability from food purchased from SCC commissary.
7.   The Defendant[s named in this Count] POWELL, supported by Defendant WEAD, as reflected in the administrative remedy process, changed the allowance to bring the meals back, and have given no other justification other than "that was the way it was done before," and/or "we checked with other facilities and they do it this way." These justifications for the refusal to accommodate requirements of Jewish law related to eating meals are not narrowly tailored to the furtherance of any compelling government interest.
8.   Defendants LOPEZ and NEWELL are responsible for the violations described in this Count, being the facility Chaplains during the times relevant to the complaint and responsible for ensuring religious diet practices comply with the requirements of a particular faith.
9.   At the time of this second amended complaint, SCC has, as of February 2024, reinstated the practice of allowing the kosher meals to be taken back to inmates cells for consumption, rather than requiring them to be consumed in the chow hall. This Count remains for the purposes of declaratory relief and damages.

4.   **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

1.     Petitioner has suffered monetary damages due to the measures he has <u>necessarily</u> undertaken to observe his sincerely held religious beliefs, namely the provision of his own meals from commissary.

2.     Petitioner is faced with the compulsory violation of his sincerely held religious beliefs if he cannot or does not provide for his own meals from facility commissary.

3.     **Administrative Remedies:**

     a)  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?       Yes

     b)  Did you submit a request for administrative relief on Count VIII?       Yes

     c)  Did you appeal your request for relief on Count VIII to the highest level?       Yes

## COUNT VI

1.     State the constitutional or other federal civil right that was violated: <u>First and Fourteenth Amendments, actionable through, 42 U.S.C. § 2000cc</u>.

2.     **Count VI.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.

☐ Basic necessities    ☐ Mail    ☐ Access to the court    ☐ Medical care
☐ Disciplinary proceedings    ☐ Property    ☒ Exercise of religion    ☐ Retaliation
☐ Excessive force by an officer    ☐ Threat to safety    ☐ Other:_____.

3.     **Supporting Facts.**  State as briefly as possible the FACTS supporting Count VI.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1.     Defendants WEAD, POWELL, LOPEZ, NEWELL, <u>CORECIVIC</u>, TRINITY, PITZ, and DOEs 1-10 have violated Plaintiff's First Amendment Rights by failing to comply with Jewish law in the planning, preparation, and serving of kosher meals.

2.     The kosher diet at Saguaro Correctional Center (hereinafter "SCC") is primarily based on the "universal" TVP based diet, or "common fare" and does not provide any meat products to provide for the special provisions required by Jewish law for meals on Shabbat and holidays, namely the requirement that meat be eaten as part of meals on Shabbat and holidays.

3.     The kosher diet at SCC only provides fish in one meal every two weeks, which fails to meet the requirements Jewish law which requires that fish be eaten as part of every meal on Shabbat and holidays.

4.     <u>Additionally, the kosher diet menu provides no special meal provisions for holidays, apart from Passover, to provide items in accordance with Jewish practices and/or traditions, such as fried foods for Hanukkah, hamentashen (a special pastry) for Purim, dairy food (traditionally cheesecake) for Shavuot, and chicken for Simchat Torah, and for which, apart from not providing, Defendants named in this Count do not allow to be donated by outside groups, such as the Aleph Institute.</u>

5.     <u>Defendants DOEs 6-10, being the dietitian(s) responsible establishing the menu for the kosher diet, have violated Plaintiff's First Amendment Rights by failing to comply with Jewish law and/or traditions in the planning of kosher meals by failing to provide meal items in accordance with Jewish law and/or practices as described above in ¶¶ 2-4.</u>

6. [4.]     Jewish law requires only kosher for Passover foods be consumed during Passover.  Even foods which are kosher, if they are not kosher for Passover, are not permissible.

7. [5.]     During Passover, the facility provides meals which are supposed to be kosher for Passover.

8.     <u>During Passover, Defendants PITZ and/or DOEs 1-5 utilize and/or direct inmate workers to utilize the kosher kitchen area to continue to make meals for kosher diet participants, such as Muslims, who are not participants in the Passover meals, and such meals continue to be prepared and served with chametz (category of foods prohibited by Jewish law during Passover which includes bread, cookies, and even TVP), which renders the kitchen area unfit to prepare Passover foods.</u>

9.     <u>Defendants PITZ and/or DOEs 1-5 utilize and/or direct inmate workers to use the kosher kitchen area to prepare foods for Passover, to include unsealing and repackaging certified kosher for Passover items, which renders the meals unfit for Passover.</u>

10. [6.]    SCC utilizes Rabbi Dan Hayman ("Rabbi Hayman") to inspect their facility kitchen, who, based on statements made both in person and within a document originally contained within, and then removed from, Plaintiff's Grievance No. 037-23, does not certify the SCC kitchen, he only advises on proper set up and procedures.

11. [7.]    Regardless of Rabbi Hayman's advice, or even <u>Defendant TRINITY's</u> compliance with any such advice, the SCC "kosher kitchen" remains uncertified, as Rabbi Hayman states he does not provide kosher certification.

12. [8.]    [At SCC, Trinity has] <u>Defendants PITZ and/or DOEs 1-5 have violated Plaintiff's First Amendment Rights by failing to comply with Jewish law in the preparation and serving of kosher meals by</u> repeatedly demonstrated a disregard for, and/or ignorance of Jewish dietary laws, having on multiple occasions served<u>, and in some instances regularly serve:</u>

     a)  meals rendered non-kosher by either the meal or foods served within the meal being cooked in violation of work

proscriptions;

    b)   opening, handling, and repackaging sealed kosher for Passover items (particularly doing so in an environment which is not suitable for handling kosher for Passover items, such a kitchen which lacks the appropriate kosher certification, and/or in areas also being used for preparing non-kosher for Passover meals);

    c)   non-kosher items (items in sealed packaging without kosher certification);

    d)   items for Passover which were not kosher for Passover (items in sealed packaging without kosher for Passover certification);

    e)   items for Passover which were not kosher (items in sealed packaging without any kosher certification);

    f)   meals which were improperly sealed prior to leaving the "kosher kitchen" area (thus being subject to contamination by handling in the presence of non-kosher foods on the serving line); and,

    g)   serving meal items for the kosher diet directly off non-kosher diet lines which are used for serving non-kosher foods and are, subsequently, not kosher.

13. [9.] The Defendants named in this Count's failure to comply with kosher dietary laws means that an observant Jewish inmate is not provided kosher meals in accordance with Jewish law, and must either violate his sincerely held religious beliefs, purchase his own food from commissary in order to eat, or not eat, thus the prohibition creates a substantial burden on Plaintiff.

14.    Defendants LOPEZ and NEWELL are responsible for the rights violations detailed in this Count as, per the contract between Hawai'i and Defendant CORECIVIC, "Religious diets shall meet the nutritional requirements and SERVED AS DIRECTED BY THE FACILITY CHAPLAIN" (Hawai'i/CoreCivic contract, Attachment S-1, Page 15, emphasis added).

15.    Defendant POWELL, being the Assistant Warden over Programs at the times relevant to this complaint, and responsible for decisions related religious matters, to include religious diets, has violated Plaintiff's First Amendment Rights by failing to correct violations of Jewish law in the planning, preparation, and serving of kosher meals when Plaintiff sought relief for the violations described in this Count through the facility's administrative remedy processes, by denying the corrective actions sought to address the complaints described in this Count. Defendant POWELL is also the "Facility Administration" official who signed off on on the kosher menu served at SCC.

16.    Defendant WEAD violated Plaintiff's First Amendment Rights by failing to correct violations of Jewish law in the planning, preparation, and serving of kosher meals when Plaintiff sought relief for the violations described in this Count through the facility's administrative remedy processes, and/or when matters already addressed through the administrative remedy processes were brought to his attention on October 5, 2021 at a meeting to address such complaints, by denying the corrective action(s) sought to address the complaints described in this Count.

17.    Defendant TRINITY is the contracted entity responsible for providing meals, to include those provided for the kosher diet, at SCC, and are responsible for the rights violations committed in this Count pursuant to the exercise of their contractually required obligation to provide kosher meals.

18.    Defendant CORECIVIC is responsible for ensuring compliance with its own policies, and the rights violations detailed in this Count are in violation of Core Civic Policy 20-4, which defines a religious diet as "A specific diet, prepared and served in accordance with a particular religion's dietary restrictions or guidelines, that meets the requirements and religious dietary laws of a given faith." As detailed in this Count, the kosher diet served at SCC fails to comply with Core Civic policy.

4.    **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff has suffered, and continues to suffer, injury through the violation of his First Amendment Rights.

5.    **Administrative Remedies:**

    a)   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    Yes

    b)   Did you submit a request for administrative relief on Count VI?    Yes

    c)   Did you appeal your request for relief on Count VI to the highest level?    Yes

## COUNT VII

1.    State the constitutional or other federal civil right that was violated: Fourteenth Amendment, actionable through 42 U.S.C. § 1983 .

2.    **Count VII.** Identify the issue involved. Check **only one.** State additional issues in separate counts.

☐ Basic necessities      ☐ Mail      ☐ Access to the court      ☐ Medical care
☐ Disciplinary proceedings      ☐ Property      ☐ Exercise of religion      ☐ Retaliation
☐ Excessive force by an officer      ☐ Threat to safety      ☒ Other: Religious Discrimination .

3.    **Supporting Facts.** State as briefly as possible the FACTS supporting Count VII. Describe exactly what **each**

**Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1.     Defendants THOMAS, WEAD, POWELL, LOPEZ, NEWELL, PITZ, BECHLER, [and] DOEs 1-10, TRINITY, and CORECIVIC have deprived, and continue to deprive, Plaintiff of equal protection under the laws, in violation of the Fourteenth Amendment of the United States Constitution by[,]:

    a)  failing to provide holiday meals, for State and Federal holidays and other recognized observances, to Jewish inmates on the kosher diet equal to those served to those on non-kosher diets;

    b)  providing meals [provided] for Passover, a significant Jewish holiday with special dietary restrictions, which are observably and significantly smaller than other meals, both compared to all other diets, and the regular kosher menu (being an estimated – as the dietary information is not available, even upon request – 1500 to 2000 calories, compared to 3000+ calories for other menus), and;

    c)  the lack of variety in the kosher menu, most notably the breakfast menu where the same items are served six days a week, where kosher items of similar variety to the foods served on the non-kosher meals could be served.

This treatment is not narrowly tailored to a compelling governmental interest.  Nor is there any rational basis for the Defendants named in this Count's decision to treat Plaintiff differently than other inmates. Instead, this decision, based wholly on a religious distinction, is arbitrary and irrational.

2.     On recognized national holidays (such as Thanksgiving, Memorial Day, Fourth of July, etc.), three specified holidays for the State of Hawai'i, and events (such as Superbowl, Cinco de Mayo, etc.) the Defendant's named in this Count provide special holiday meals (usually a double to triple portion lunch meal with special holiday related menu items and deserts), to all diets except the kosher diet, which receives "regular menu items" as per the holiday meal menus.

3.     The Hawai'i Contract provides that Defendant CORECIVIC will provide holiday meals for Hawai'i inmates, stating, "Three (3) special dinner menus shall be provided for the following special Hawaii holidays: Prince Kuhio Day (March), King Kamehameha Day (June), Admissions Day (August) and any other special event as agreed upon by the PROVIDER and the STATE by providing a special meal at no additional cost to the STATE" (Hawai'i/CoreCivic contract, Attachment S-1, Page 4).

4.     Defendants DOEs 6-10 have violated Plaintiff's Fourteenth Amendment rights by failing to provide dietitian approved menus for holiday meals, as required by contract and/or agreement between Defendant CORECIVC and the State of Hawai'i as mentioned above in ¶ 1(a), for the kosher diet, denying Plaintiff special holiday meals similar to those served to non-Jewish inmates, as described above in ¶ 2, thus denying Plaintiff equal treatment on the basis of his sincerely held religious beliefs.

5.     Defendants PITZ, and DOEs 1-5 have violated Plaintiff's Fourteenth Amendment rights by excluding Plaintiff from holiday meals on the basis of his sincerely held religious beliefs by either failing to seek approved holiday meal menus from a dietitian, or by failing to, even apart from the approval of a holiday meal menu by a dietitian, provide increased portions, similar to those provided on non-kosher holiday meals, as described above in ¶ 2, from items already available and approved for the kosher diet.

6.     Defendant BECHLER is responsible for the violations of Plaintiff's Fourteenth Amendment rights, as described above in ¶ 2, in that she is the onsite contract monitor for the state of Hawai'i and responsible for ensuring compliance with the provisions of the contract between the state of Hawai'i and Defendant CORECIVIC, namely here, the provision of holiday meals, and has failed to enforce the terms of the contract regarding holiday meals so as to provide the contractually stipulated meals for the kosher diet.

7. [3.]  Rather than provide holiday meals for the kosher diet, Defendant THOMAS, in response to [related] complaints[,] regarding the failure to provide holiday meals to Jewish inmates on the kosher diet, [has] stated that he would take holiday meals away from everyone before he gives them to inmates on the kosher diet, a declaration which violated Plaintiff's Fourteenth Amendment rights by establishing a continuation of the discriminatory practices given above, under threat of retaliation by way of actions which could and/or would incite violence against Plaintiff from other inmates if Plaintiff continued to pursue the matter.

8.     Jewish law requires only kosher for Passover foods be consumed during Passover.  Even foods which are kosher, if they are not kosher for Passover, are not permissible for a Jewish person during Passover.

9.     During Passover, the facility provides meals which are supposed to be kosher for Passover.

10.    Defendants DOEs 6-10 have violated Plaintiff's Fourteenth Amendment rights by failing to provide dietitian approved menus for Passover meals which meet the same dietary standards as those provided to non-Jewish inmates thus denying Plaintiff equal treatment on the basis of his sincerely held religious beliefs.

11.    Defendants PITZ, and DOEs 1-5 have violated Plaintiff's Fourteenth Amendment rights by failing to arrange through a dietitian, or otherwise order or provide, kosher for Passover meals which meet the same nutritional standards as non-kosher for Passover meals.

12. [4.]  Trinity Services Group supervisor, Defendant PITZ, rather than dispute or resolve the claim regarding the notably smaller size of the Passover meals, as detailed in ¶ 1(b) of this Count, justified the size of the meals on the basis that the kosher diet is not a regular diet, thus basing the treatment solely on the basis of a religious distinction.

13. [5.]  Six days a week (Sunday through Friday), the kosher breakfast, consisting of 2 cups of oatmeal, two slices of bread, ½ cup apple sauce (while the menu specifies juice or fresh or canned fruit, apple sauce is, or has been for more than a year, served exclusively), 1 cup milk, coffee packet (no hot water is provided), 2 jelly packets, and 3 margarine packets, is little more than gruel and bread.  Gruel having such a connotation for being unappealing that it has, by implication, also come to mean punishment (Webster's Dictionary definition – "Gruel: a thin food made by boiling oatmeal or some other grain in water or milk. 1. a thin porridge; **2. [from to get one's gruel, to accept one's punishment] chiefly British: punishment**; 3. something that lacks substance or

significance < the argument was thin as gruel." Emphasis added).  On Saturday, the only change to the breakfast menu is to substitute cold cereal for the hot cereal (oatmeal), and that change based solely on the prohibition, under Jewish law, of cooking food on the Sabbath.

14. [6.]  The kosher breakfast is contrasted by the regular menu breakfast items, a regularly rotating varied menu which includes items such as scrambled eggs, pancakes, french toast, fried rice, and a variety of other items, all which could, if properly prepared from kosher ingredients, equally be provided as kosher menu items.  The regular breakfast menu also includes additional items which could not be served on a kosher breakfast menu, either due to the nature of the item (such as menu items which contain pork), or meat which cannot be served together with dairy items (milk being regularly served with breakfast) under Jewish law. Those items, however, provide a even larger variety to the regular diet breakfast menu, by comparison, than that provided on the kosher breakfast menu.

15.     Defendants DOEs 6-10 have violated Plaintiff's Fourteenth Amendment rights by failing to provide dietitian approved menus for the kosher diet as described in ¶ 1(c), subjecting Plaintiff to a diet menu which is, compared to non-kosher meals, excessively repetitive and/or unappealing, as described above in ¶¶ 1(c) and 13-14, so as to constitute adverse or observably punitive treatment, on the basis of a observable religious distinction, thus denying Plaintiff equal treatment on the basis of his sincerely held religious beliefs.

16.     Defendants PITZ, and DOEs 1-5 have violated Plaintiff's Fourteenth Amendment rights by failing to pursue more more equitable menu provisions from DOEs 6-10, and exploiting the vagueness in the kosher diet menu, such as where the menu states non-specific "fresh or canned fruit," or "fresh or canned vegetable," to repetitively serve the same vegetable, exacerbating the issues already presented by the dietitian approved menu, as illustrated above in ¶¶ 1(c) and 13-14, and creating further disparity between kosher and non-kosher diets, and the disparity in treatment is based solely on a religious distinction, i.e. a kosher diet provided for Jewish inmates.  Furthermore, these actions have resulted in periods of the excessive serving of a single vegetable, usually carrots or canned beets, to the exclusion, or near exclusion, of other vegetables, impacting the nutritional value of the meals.

17.     Defendants LOPEZ and NEWELL are responsible for the rights violations detailed in this as, per the contract between Hawai'i and Defendant CORECIVIC, "Religious diets shall meet the nutritional requirements and SERVED AS DIRECTED BY THE FACILITY CHAPLAIN" (Hawai'i/CoreCivic contract Attachment S-1, Page 15, emphasis added).

18.     Defendant POWELL, being the Assistant Warden over Programs and responsible for decisions related religious matters, to include religious diets, has violated Plaintiff's First Amendment Rights by failing to correct violations of Fourteenth Amendment related to serving of kosher meals, as detailed in this Count, being the "Facility Administration" official who signed off on on the kosher menu served at SCC, necessarily including holiday meal menus, and was a respondent party who denied the corrective actions sought to address the complaints described in this Count when Plaintiff sought relief for the violations described in this Count through the facility's administrative remedy processes.

19.     Defendant WEAD violated Plaintiff's First Amendment Rights by failing to correct violations of Jewish law in the planning, preparation, and serving of kosher meals when Plaintiff sought relief for the violations described in this Count through the facility's administrative remedy processes, and/or when matters already addressed through the administrative remedy processes were brought to his attention on October 5, 2021 at a meeting to address such complaints, by denying the corrective action(s) sought to address the complaints described in this Count.

20.     Defendant THOMAS violated Plaintiff's First Amendment Rights by failing to correct violations of Jewish law in the planning, preparation, and serving of kosher meals, as detailed in this Count, when Plaintiff sought relief through the Aleph Institute, a Jewish advocacy group, and ordering a continuation of the violations described in this Count, at a meeting on October 5, 2021 to address the complaints which had been raised to the Aleph Institute.

21.     Defendant TRINITY is the contracted entity responsible for providing meals, to include those provided for the kosher diet, at Saguaro Correctional Center, and are responsible for the rights violations committed in this Count pursuant to the exercise of their contractually required obligation to provide kosher meals.

22.     Defendant CORECIVIC is responsible for ensuring compliance with its own policies, and the rights violations detailed in this Count are in violation of Core Civic Policy 20-4, which defines a religious diet as "A specific diet, prepared and served in accordance with a particular religion's dietary restrictions or guidelines, that meets the religious and religious dietary laws of a given faith." As detailed in this Count, the kosher diet fails to comply with Core Civic policy.

4.     **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff has suffered, and continues to suffer, injury through the violation of his Fourteenth Amendment Rights.

5.     **Administrative Remedies:**
   a)   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                                                           Yes
   b)   Did you submit a request for administrative relief on Count VIII?                          Yes
   c)   Did you appeal your request for relief on Count VIII to the highest level?              Yes

## COUNT VIII

1.     State the constitutional or other federal civil right that was violated: Fourteenth Amendment, actionable

through 42 U.S.C. § 1983                                                                                                        .

2.     **Count VIII.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.

☐ Basic necessities          ☐ Mail               ☐ Access to the court      ☐ Medical care
☐ Disciplinary proceedings   ☐ Property           ☐ Exercise of religion     ☐ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety   ☒ Other:  Religious Discrimination        .

3.     **Supporting Facts.**  State as briefly as possible the FACTS supporting Count VIII.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1.      Defendants WEAD, POWELL, LOPEZ, NEWELL, MONTANEZ, and DOEs 16-20 have deprived, and continue to deprive, Plaintiff of equal protection under the laws, in violation of the Fourteenth Amendment of the United States Constitution, by the failure to provide kosher items (soups, meat/meat products, cheese, jelly, etc.) on facility commissary, where kosher alternatives are available, and non-kosher items are provided in abundance.  This treatment is not narrowly tailored to a compelling governmental interest.  Nor is there any rational basis for The Defendants named in this Count's decision to treat Plaintiff differently than other inmates.  Instead, this decision is arbitrary and irrational.

2.      Defendants MONTANEZ, and DOEs 16-20 have violated Plaintiff's Fourteenth Amendment rights by being the parties responsible for the available selection of commissary items and failing to provide an equitable selection of kosher items, as described in this Count, and to include the failure to provide a selection of any items which are kosher for Passover items.

3.      Defendants LOPEZ and NEWELL, being the parties, at the times relevant to this complaint, responsible for the direction of religious issues, have violated Plaintiff's Fourteenth Amendment rights by failing to provide direction to commissary regarding the special provisions necessary for observant Jewish inmates, and to ensure equal treatment with regard to those provisions.

4. [2.]  SCC commissary does not provide kosher alternatives to many non-kosher items provided for general purchase, such as kosher meat items, kosher cheese items, soup/noodle items (similar to ramen noodles sold on commissary), kosher meal items (similar to beef stew, chili, BBQ Beef, etc. sold on commissary),  and basic items, such as salt and pepper, even when and where such kosher items/alternatives are readily available.

5. [3.]  The lack of any kosher meat items provided on commissary means that such items are unavailable as an alternative means to meet the requirements of Jewish law not provided for or met by the kosher menu.

6. [4.]  SCC commissary provides no items which are kosher for Passover.

7. [5.]  SCC no longer allows donations or purchases from outside vendors/religious organizations, such as the Aleph Institute, Jewish Supply, etc., for foods for Jewish holidays such as Hanukkah, Purim, Passover, Shavuot, or Simchat Torah instead requiring all items to be provided through Trinity Services Group or facility commissary (purchased from "Keefe").

8. [6.]  Since imposing the above restriction, Defendants named in this Count [and/or Defendants] have made a consistent practice of not making relevant items, such as kosher for Passover items, to include commissary items such as coffee, supplemental snacks, and basic condiments (such as mayonnaise, salad dressing, salt and pepper, etc.), which are no longer provided with the kosher for Passover meals, though they were in the past), as well as special foods for Hanukkah (traditionally involves fried foods and sweets), Purim traditionally involves the exchange/giving of "ready to eat" pastries and sweets), Shavuot (requires dairy foods, traditionally cheese cake), etc., available accordingly.

9. [7.]  For Passover in 2023, SCC did provide a "Passover package," but that package was put out without advance notice, had a given price of $77.77, and had to be turned in the day it was handed out.  The package was pre-set, only contained a handful of random items, and was limited to one per inmate.

10. [8.]  The 2023 "Passover package" contained the following:
      a)  1 - package gefilte fish
      b)  1 - package matzah ball soup (on the order form but dropped as "out of stock")
      c)  1 - box matzah
      d)  2 - packages coconut macaroons
      e)  1 - package chocolate chip cookies
      f)  2 - 3.5 oz chocolate bars
      g)  1 - 9 oz bottle horseradish sauce

11. [9.]  From July through September of 2023, the same "Passover packages" were sold to the general population for $25.00 per bag.

12. [10.] The Hawai'i prison population is, annually, provided the opportunity to order a "Holiday Package" (sold as a "Christmas package" prior to grievance action relating to this issue).

13. [11.] Since Plaintiff has, through the facility grievance process, raised the issue that the facility provides a "Christmas package" sale for Christmas, a second "Summer Package" sale has been added from the same vendor.  Both the Holiday and Summer Packages offered to General Population can be purchased in quantities limited only by an inmates available funds.

14. [12.] Defendant[s] POWELL [named in this Count] claims, in Plaintiff's grievance related to the matter, that the Holiday and

Summer Packages are not discriminatory because all inmates are allowed to order those packages, however, while available for all inmates in the Hawai'i prison population to purchase, the Holiday and Summer Packages exclude Jewish inmates as they do not contain any kosher items, and furthermore, contain many items such as shell fish or pork, which, beyond simply lacking kosher certification, are directly prohibited by Jewish law.

15. [13.] SCC commissary frequently lists kosher items as not being kosher, further limiting the already reduced selection of items for inmates on the kosher diet, particularly where purchases of kosher items listed as non-kosher on commissary can result in suspension from the kosher diet.

16.   Defendant POWELL violated Plaintiff's Fourteenth Amendment rights by failing to correct the violations described in this complaint in and through SCC's administrative remedy process, thus perpetuating the violations.

17.   Defendant WEAD violated Plaintiff's Fourteenth Amendment rights by failing to correct the violations described in this complaint in and through SCC's administrative remedy process, and/or when matters already addressed through the administrative remedy processes were brought to his attention on October 5, 2021 at a meeting to address such complaints, by denying the corrective action(s) sought to address the complaints described in this Count.

4.   **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff has suffered, and continues to suffer, injury through the violation of his Fourteenth Amendment Rights.

5.   **Administrative Remedies:**
   a)  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                              Yes
   b)  Did you submit a request for administrative relief on Count VIII?                       Yes
   c)  Did you appeal your request for relief on Count VIII to the highest level?          Yes

## COUNT IX

1.   State the constitutional or other federal civil right that was violated: First and Fourteenth Amendments, actionable through 42 U.S.C. § 1983                                                                                          .

2.   **Count IX.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
   ☐ Basic necessities           ☐ Mail                    ☐ Access to the court        ☐ Medical care
   ☐ Disciplinary proceedings    ☐ Property                ☐ Exercise of religion       ☐ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety    ☒ Other:  Religious Discrimination                    .

3.   **Supporting Facts.**  State as briefly as possible the FACTS supporting Count IX.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1.   Defendant THOMAS, while serving as the Saguaro Correctional Center (hereinafter "SCC") facility Warden, in concert with Defendant BRADLEY, put in place, or oversaw the putting in place, restrictions on which vendors inmates could obtain publications from.

2.   Defendants WEAD, ROBERTSON, CARRIER, and DOEs 11-15's, have continued the policies put in place by Defendants THOMAS and BRADELY with regard to the restriction of vendors inmates could obtain publications from.

3.   Defendants named in this Count have deprived and continue to deprive Plaintiff of equal protection under the laws by failing to treat Plaintiff similarly to other similarly situated inmates also housed at SCC with regards to censorship policies and practices complained of herein, in violation of the Fourteenth Amendment to the United States Constitution.

4.   Policy and/or practice at SCC prohibits Plaintiff from ordering and/or receiving books from vendors other than Barnes & Noble (at the time of this second amended complaint, inmates can no longer order directly from Barnes & Noble, though outside orders from the vendor are still allowed, the facility has also added Discover Books, Books A Million, and Sure Shot Books as vendors which can be utilized by outside parties to order books, but do not allow direct purchases by inmates), Books N Things (added at the time of this second amended complaint to replace Barnes & Noble as a vendor inmates can directly order from), Edward R. Hamilton (Bargain Books), and Christian Book Distributors ("THE FACILITY APPROVED VENDORS").  Any book not available through [those three vendors] Books N Things , Edward R. Hamilton (Bargain Books), and Christian Book Distributors is not available to Plaintiff, as even while Barnes & Noble, Discover Books, Books A Million, and Sure Shot Books are "approved," they require that any purchases from those vendors must be made by outside parties, and it is questionable, at best, as to whether Plaintiff can make such arrangements.

5.   While some Jewish religious books, namely copies of the Torah or Tanakh, are available from at least some of THE FACILITY APPROVED VENDORS, Plaintiff has been unable to locate texts such as the Ketzer Shulchan Aruch (The Code of Jewish

Law), Talmud (to include individual tractates), Mishnah Torah, Siddur (prayer book for daily and weekly personal prayers), and Machzor (specialized holiday prayer books) - books which are critical to Jewish study and/or daily life (including prayer) - and/or rabbinical commentary and/or books on spiritual guidance/life application (similar to Christian spiritual guidance/life application books available, particularly those widely sold by the approved vendor Christian Book Distributor), which are readily, and sometimes only, available from religious sources.

6.[5.]    SCC has as an approved vendor Christian Book Distributors/ChristianBook.com, a religious book vendor for the Christian faith, but fails to provide any religious vendors for other faith groups, to include publisher direct orders from religious publishers, such as ArtScroll/Mesorah Publishing, a publisher direct vendor for Jewish religious texts and materials.

7.      There is, nor has there been, any alleged security issues related to Jewish religious vendors such as ArtScroll/Mesorah Publishing, KTAV Publishing Co., or Kehot Publishing, nor have the Defendants named in this Count asserted having found any such actual security violation issues.

8.[6.]    Policy and practice at SCC prohibits Plaintiff from receiving gift publications not originating from one of THE FACILITY APPROVED VENDORS, creating a ban on unsolicited gift publications sent from religious organizations.

9.      Reaching Out is a Jewish prison outreach organization, providing religious materials and support to Jewish inmates across the country.

10.     Reaching Out regularly sends religious materials, including books, to prisons across the country free of charge, i.e. gift publications, either by request (solicited) or on the basis of a rabbi's recommendation (unsolicited).

11.     With its extensive outreach activities aiding inmates in prison, there are and have been no known violations of prison security associated with Reaching Out, nor have the Defendants named in this Count asserted having found any such actual security violation issues.

12.     Plaintiff is informed and so believes that Christian inmates are allowed to receive gift publications from Christian religious organizations who are not part of THE FACILITY APPROVED VENDORS, including, but not limited to, R. B. Thieme, Jr. Bible Ministries, Ariel Ministries, Tony Evans Ministries, Perry Stone Ministries, and Dr. David Jeremiah Ministries.

13.     There is no rational basis for distinction between the prohibition against materials from Jewish organizations such as Reaching Out, and the allowance of materials from Christian organizations such as those detailed above in ¶ 12.

14.[7.]    Plaintiff, a Jewish inmate, is being treated differently from other similarly situated inmates also housed at SCC with regards to censorship policies and practices complained of herein, as 1) a religious vendor is provided for Christian inmates, but not for Jewish inmates, and; 2) Plaintiff is barred from receiving gift publications from Jewish religious organizations while Defendants allow gift publications from Christian religious organizations for Christian inmates, thus violating Plaintiff's right to equal treatment regarding the practice of his faith as guaranteed by the First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment to the United States Constitution, in concert with the Equal Protection Clause of the Fourteenth Amendment. This differential treatment is not narrowly tailored to a compelling government interest.  Nor is there any rational basis for The Defendants named in this Count's decision to treat Plaintiff differently from other similarly situated inmates also housed at SCC. Instead, this distinction is arbitrary and irrational.

15.     In order to prevent the introduction of contraband into the prison, SCC uses multiple security measures.  Incoming packages are subject to the following:

    a)   an electronic "sniffer" device or "ray scanner" (used to detect chemical compounds emitted from or contained in a package);

    b)   an X-Ray scanner;

    c)   inspection by a trained K-9 unit; and,

    d)   physical inspection by mailroom staff.

16.     Core Civic policy dictates that "All publications will be reviewed/inspected to ensure... That the publication was sent directly from a recognized publisher, distributor, or authorized retailer" (Core Civic Policy 16-1(P)(4)(i)).

17.     SCC's "approved/banned vendor list" stems from the provision within Core Civic policy which states, "The Warden/Facility Administrator may refuse to process publications shipped from persons, entities, and organizations which cannot assure the facility that the publications have not been handled by persons other than their employees and the employees of the mail or shipping service used for shipments to prevent the introduction of contraband" (Core Civic Policy 16-1(P)(4)(i)).

18.     Defendants, in their actions detailed in this Count, do not allege nor show that any of the Jewish religious vendors and/or organizations meet the criteria set forth in CoreCivic policy 16-1, as detailed above in ¶¶ 16-17 so as to meet the criteria so as to deny publications from them.

19.     Defendants ROBERTSON and DOEs 11-15 have deprived and continue to deprive Plaintiff of equal protection under the law by the continued enforcement of the practices detailed in this Count by barring the receipt, frequently without notice, of any materials from "banned vendors."

20.     Defendants WEAD and BRADELY have deprived and continue to deprive Plaintiff of equal protection under the law by the implementation of the practices described in this Count, and by failing to correct the violations as and when addressed through SCC's administrative remedy process.

21.[8.]    As a direct and proximate result of Defendants named in this Count's conduct in violation of Plaintiff's First Amendment rights as set forth above, Plaintiff has suffered, and continue to suffer, emotional distress and a chilling effect on his First Amendment rights.

<u>22.</u> [9.]   The Defendants named in this Count's book ordering policy and prohibition of gift publications are not related to a legitimate penological interest, but instead are an exaggerated response by prison officials where other ready alternatives exist.
<u>23.</u> [10.]   Defendants named in this Count's policies and practices complained of herein have been undertaken by the Defendants under the color of state law.
[11.      Defendants THOMAS and BRADLEY has been the subject of legal action for the same conduct at SCC in the past (both the restriction of vendors and the unauthorized return of publications as detailed herein) which was settled in favor of the plaintiffs (Prison Legal News v. Corrections Corporation of America, Case No. 2:09-cv-01831-PHX-ROS, in the U.S. District Court for the District of Arizona (2009)) and which clearly establish that Defendants THOMAS and BRADLEY are, or reasonable should be, aware of the wrongfulness of these actions.]

4.      **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

    1.   Plaintiff has suffered, and continues to suffer, emotional distress and a chilling effect on his First Amendment rights.
    2.   Plaintiff has suffered, and continues to suffer, injury through the violation of his Fourteenth Amendment Rights.

5.      **Administrative Remedies:**
    a)   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?        Yes
    b)   Did you submit a request for administrative relief on Count VIII?        Yes
    c)   Did you appeal your request for relief on Count VIII to the highest level?        Yes

## COUNT X

1.      State the constitutional or other federal civil right that was violated: <u>Fourteenth Amendment, actionable through 42 U.S.C. § 1983</u>                                                    .

2.      **Count X.**  Identify the issue involved.  Check **only one.** State additional issues in separate counts.
☐ Basic necessities    ☐ Mail    ☐ Access to the court    ☐ Medical care
☐ Disciplinary proceedings    ☒ Property    ☐ Exercise of religion    ☐ Retaliation
☐ Excessive force by an officer    ☐ Threat to safety    ☐ Other:_____  _____.

3.      **Supporting Facts.**  State as briefly as possible the FACTS supporting Count X.  Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

1.      Defendants WEAD, BRADLEY, ROBERTSON, CARRIER, and DOEs 11-15 have deprived and continue to deprive Plaintiff of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution by failing to provide Plaintiff notice of the return of his <u>legal property to the sender, to include</u> non-refundable facility approved purchases, and an opportunity to be heard with regard to the return of his <u>legal property to the sender, to include</u> those non-refundable facility approved purchases <u>resulting in the deprivation of such property without due process.</u>
2.      Plaintiff has suffered the loss of property without due process of law (namely the loss of the facility approved orders and/or the monies paid out in relation to those orders, to include shipping costs, particularly for non-refundable orders, which were returned to vendor(s) in violation of CoreCivic policy 16-1(Q)(4)), <u>which establishes the procedures, i.e. due process, by which to deprive inmates at Saguaro Correctional Center (hereinafter "SCC") of property received by mail.</u>
3.      "The Hit Pointe" is a "virtual store," an online/mail order distributor selling graphic novels, manga, fiction novels, and roleplaying books and accessories (i.e., dice, flipmats, cardstock miniatures, etc.).
4.      In September 2022,  [the Defendants named in this Count] <u>Saguaro Correctional Center administration</u> approved "The Hit Pointe" as an approved vendor for the purchase of books and role playing game materials (such as dice, flipmats, card stock pieces, etc.) at SCC, and provided formal notice of the approval on October 6, 2022.
5.      Plaintiff made multiple purchase orders from "The Hit Pointe" between September of  2022 and the early part of November 2022.
6.      On November 16, 2022, Defendants BRADLEY, and CARRIER banned "The Hit Pointe" due to "security breach information," as per a staff email on that date.  The change went into effect with multiple outstanding orders placed by Plaintiff which had been approved by SCC.  No formal notification was made to inmates regarding The Defendants named in this Count's banning of "The Hit Pointe" as an approved vendor beyond an approved vendor list memo which was reissued on November 23, 2022, which did not, and had never, listed "The Hit Pointe" as a vendor.
[7      Plaintiff is informed and so believes, that the alleged cause for banning "The Hit Pointe" as a vendor was ultimately stated to be that a third party, in no way affiliated with "The Hit Pointe," had  attempted to ship drugs into the facility using a fraudulently

labeled package which was disguised as a package from "The Hit Pointe." The package was identified and intercepted as a result of the screening policies in place pursuant to Core Civic Policy 16-1(P)(4)(a)(i).]

[8      Classifying "The Hit Pointe" as a banned vendor on the basis of the above alleged event is arbitrary, as nothing prevents third party actors from doing the same with any other vendor on The Defendants named in this Count's approved vendor list. Plaintiff has found at least five similar breaches within case law from the Federal Circuit Courts involving SCC approved vendor Barnes & Noble (Stone, v. Derosa, 2009 U.S. Dist. LEXIS 105135 (9th Cir. 2009); Rodriguez, v. Ebbert, 2016 U.S. Dist. LEXIS 144857 (3rd Cir. 2016); Owens, v. Knight, 2013 U.S. Dist. LEXIS 95848 (7th Cir. 2013); Mazzini, vs. Breckon, 2017 U.S. Dist. LEXIS 180265 ( 2nd Cir. 2017); Bethel, vs. Jenkins, 2019 U.S. Dist. LEXIS 29089 (6th Cir. 2019)).]

7. [9]    In October, Plaintiff placed his final order, a nonrefundable purchase, with "The Hit Pointe," which was processed and approved by SCC administration on or about November 9, 2022, and valued at $83.40.

8. [10]    After hearing nothing regarding his purchase from "The Hit Pointe," Plaintiff contacted the vendor regarding the status of his orders. Plaintiff received a response from The Hit Pointe" on or about January 13, 2023 stating that the orders had been returned to them, and stating "a Post-It Note on the box states 'BANNED VENDOR.'" They stated that a number of packages had been returned in the same fashion.

9. [11]    Plaintiff was not notified of the denial of the orders from "The Hit Point," as required by CoreCivic Policy 16-1(Q)(4), nor were Plaintiff nor "The Hit Pointe" (based on statements to Plaintiff from The Hit Pointe) given the opportunity, in accordance with CoreCivic Policy 16-1(Q), to appeal the denial.

10. [12]    Plaintiff's November 9, 2022 order from The Hit Pointe was made in good faith by Plaintiff, and approved by the SCC administration.

11.      Upon purchase and mailing, the books purchased and shipped from The Hit Pointe became the legal property of Plaintiff.

12. [13]    The Defendants named in this Count's denial of Plaintiff's November 9, 2022 order from The Hit Pointe was not based on the actions of either Plaintiff or the vendor The Hit Pointe.

13. [14]    Following the classification of "The Hit Pointe" as a banned vendor, Defendant[s named in this Count] CARRIER allowed some inmates housed at SCC to receive their outstanding incoming orders, while arbitrarily denying others, thus treating similarly situated persons differently. No cause for the differential treatment was ever given.

14. [15]    "Reaching Out" is a Jewish outreach organization serving prisoners by providing various resources, such as books (including "unsolicited gift publications"), newsletters, religious counseling and advice, etc...

15. [16]    Plaintiff, a Jewish inmate, regularly communicates with "Reaching Out."

16. [17]    Plaintiff has received notification from "Reaching Out" that unsolicited gift publications from them have been returned to them, which were returned without Plaintiff ever being notified and/or Plaintiff or Reaching Out (based on statements from Reaching Out) being provided the opportunity to appeal the denial as required by CoreCivic Policy 16-1(Q)(4).

17.      Upon mailing, the publication(s) shipped from Reaching Out became the legal property of Plaintiff.

18.      The actions of the Defendants named in this Count, as set forth above, have deprived Plaintiff of his lawful property, the materials sent from Reaching Out, without due process.

19.      Plaintiff has been informed by "Reaching Out" that they are reluctant to send additional items to Plaintiff due to the items being returned by the facility.

20.      Defendants ROBERTSON and DOEs 11-15 have violated Plaintiff's Fourteenth Amendment rights, as described within this Count, by being the parties who returned Plaintiff's lawful property to the respective vendors, as described in this Count, without notice to Plaintiff, and in violation of CoreCivic Policy, as set forth in this Count, thus denying Plaintiff due process, and were taken at the direction of Defendants BRADLEY and/or CARRIER.

21. [20] Defendants named in this Count continue to enforce the censorship policies and practices complained of herein as of the date of this Complaint. Plaintiff [are] is suffering irreparable harm as a result of Defendant's ongoing violations of [their]his Constitutional rights, and therefore Plaintiff have no adequate remedy at law. These violations are continuing and will continue until enjoined by this Court.

22.      Defendant WEAD has violated Plaintiff's Fourteenth Amendment rights, as described within this Count by perpetuating the violations described in this Count by denying resolution through SCC's administrative remedy process.

[21 Defendant BRADLEY has been the subject of legal action for the same conduct at SCC in the past (both the restriction of vendors and the unauthorized return of publications as detailed herein) which was settled in favor of the plaintiffs (Prison Legal News v. Corrections Corporation of America, Case No. 2:09-cv-01831-PHX-ROS, in the U.S. District Court for the District of Arizona (2009)) and which clearly establish that Defendant BRADLEY is, or reasonable should be, aware of the wrongfulness of these actions.]

4.      **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

1.   Plaintiff has suffered, and continues to suffer, lost property valued at $ 83.40.
2.   Plaintiff has suffered, and continues to suffer, impaired access to religious materials.
3.   Plaintiff has suffered, and continues to suffer, injury through the violation of his Fourteenth Amendment Rights.

5.      **Administrative Remedies:**
      a)  Are there any administrative remedies (grievance procedures or administrative appeals) available at your

institution?                                                                                    Yes
  b)   Did you submit a request for administrative relief on Count VIII?            Yes
  c)   Did you appeal your request for relief on Count VIII to the highest level?    Yes

## COUNT XI

1.      State the constitutional or other federal civil right that was violated: First and Fourteenth Amendments, actionable through 42 U.S.C. § 1983                                                                      .

2.      **Count XI.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
☐ Basic necessities              ☐ Mail                    ☐ Access to the court        ☐ Medical care
☐ Disciplinary proceedings    ☐ Property              ☐ Exercise of religion        ☐ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety  ☒ Other: Access to Publications                    .

3.      **Supporting Facts.**  State as briefly as possible the FACTS supporting Count XI.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1.      Defendant THOMAS, while serving as the Saguaro Correctional Center (hereinafter "SCC") facility Warden, in concert with Defendant BRADLEY, Assistant Warden in charge of mail and property matters, to include vendors for publications, as applicable in this Count under Core Civic policy 16-1, put in place, or oversaw the putting in place, restrictions on which vendors inmates could obtain publications from.
2.      Defendants WEAD[,] and BRADLEY [, ROBERTSON, CARRIER, and DOEs 11-15,] have continued the policies put in place by Defendants THOMAS and BRADLEY with regard to the restriction of vendors inmates could obtain publications from.
3.      The current policy and practice at SCC prohibits Plaintiff from ordering and/or receiving books from vendors other than Barnes & Noble (at the time of this second amended complaint, inmates can no longer order directly from Barnes & Noble, though outside orders from the vendor are still allowed.  Additionally, the facility has also added Discover Books, Books A Million, and Sure Shot Books as vendors which can be utilized by outside parties to order books, but do not allow direct purchases by inmates), Books N Things (added at the time of this second amended complaint to replace Barnes & Noble as a vendor inmates can directly order from), Edward R. Hamilton (Bargain Books), and Christian Book Distributors (hereinafter "THE FACILITY APPROVED VENDORS").  Any book not available through [those three vendors] Books N Things , Edward R. Hamilton (Bargain Books), and Christian Book Distributors is not available to Plaintiff, as even while Barnes & Noble, Discover Books, Books A Million, and Sure Shot Books are "approved," they require that any purchases from those vendors must be made by outside parties, and it is questionable, at best, as to whether Plaintiff can make such arrangements.
4.      The Defendants named in this Count's book ordering policy is not related to a legitimate penological interest, but instead is an exaggerated response by prison officials where other ready alternatives exist.
5. [4.]   The vendor restriction practice at SCC prohibits Plaintiff from receiving gift publications not originating from THE FACILITY APPROVED VENDORS, thus creating a ban on unsolicited gift publications sent from religious organizations.
6.      The Defendants named in this Count's prohibition of gift publications is not related to a legitimate penological interest, but instead is an exaggerated response by prison officials where other ready alternatives exist.
7.      In order to prevent the introduction of contraband into the prison, SCC uses multiple security measures.  Incoming packages are subject to the following:
          a)   an electronic "sniffer" device or "ray scanner" (used to detect chemical compounds emitted from or contained in a package);
          b)   an X-Ray scanner;
          c)   inspection by a trained K-9 unit; and,
          d)   physical inspection by mailroom staff.
8.      Core Civic policy dictates that "All publications will be reviewed/inspected to ensure... That the publication was sent directly from a recognized publisher, distributor, or authorized retailer" (Core Civic Policy 16-1(P)(4)(i)).
9.      SCC's "approved/banned vendor list" stems from the provision within Core Civic policy which states, "The Warden/Facility Administrator may refuse to process publications shipped from persons, entities, and organizations which cannot assure the facility that the publications have not been handled by persons other than their employees and the employees of the mail or shipping service used for shipments to prevent the introduction of contraband" (Core Civic Policy 16-1(P)(4)(i)).
10.     Defendants, in their actions detailed in this Count, do not allege nor show that any of the "banned vendors" meet the criteria set forth in CoreCivic policy 16-1, as detailed above in ¶¶ 7-8 so as to meet the criteria so as to deny, i.e. refuse to process, publications from them.
11.     At SCC any non-approved vendor is automatically a "banned vendor," and such banned vendor status is not related to any assessment of the criteria established by CoreCivic policy 16-1, as detailed above in ¶¶ 7-8, nor is it related to any actual security

violations or threats.

12.     As CoreCivic policy only provides for denying publications from vendors pursuant to Core Civic Policy 16-1(P)(4)(i), as detailed above in ¶ 8, there is no policy nor path providing a means to seek approval status for additional vendors, nor is there a path for vendors to appeal their status as banned vendors, and attempts to get vendors approved are frequently met with denial without regard to or showing of any security issues with the vendor or any investigation into such issues.

13. [5]  Core Civic SCC policy and practice provided for the rejection of books and/or publications sent to Plaintiff solely because they were not sent from one of THE FACILITY APPROVED VENDORS.  There are multiple vendors, to include religious organizations, for which the facility has rejected/returned publications (books) without notification and/or appeal procedures, who send publications which are accepted at prisons and jails across the country as a matter of course, and have not created any security problems at those institutions.  [Bans such as those imposed by defendants are unconstitutional. See, e.g. Ashker v California Dept. of Corrections, 350 F.3d 917 (9th Cir. 2003).]

14.     On November 16, 2022, Defendants BRADLEY, and CARRIER banned "The Hit Pointe" due to "security breach information," as per a staff email on that date.  The change went into effect with multiple outstanding orders placed by Plaintiff which had been approved by SCC.  No formal notification was made to inmates regarding The Defendants named in this Count's banning of "The Hit Pointe" as an approved vendor beyond an approved vendor list memo which was reissued on November 23, 2022, which did not, and had never, listed "The Hit Pointe" as a vendor.

15.     Plaintiff is informed and so believes, that the alleged cause for banning "The Hit Pointe" as a vendor was ultimately stated to be that a third party, in no way affiliated with "The Hit Pointe," had attempted to ship drugs into the facility using a fraudulently labeled package which was disguised as a package from "The Hit Pointe."  The package was identified and intercepted as a result of the screening policies in place pursuant to Core Civic Policy 16-1(P)(4)(a)(i), and as described above in ¶ 5.

16.     Classifying "The Hit Pointe" as a banned vendor on the basis of the above ALLEGED event is arbitrary, as nothing prevents third party actors from doing the same with any of THE FACILITY APPROVED VENDORS, in fact, Plaintiff has found at least five similar breaches, found within case law from the Federal Circuit Courts, involving SCC approved vendor Barnes & Noble (Stone, v. Derosa, 2009 U.S. Dist. LEXIS 105135 (9th Cir. 2009); Rodriguez, v. Ebbert, 2016 U.S. Dist. LEXIS 144857 (3rd Cir. 2016); Owens, v. Knight, 2013 U.S. Dist. LEXIS 95848 (7th Cir. 2013); Mazzini, vs. Breckon, 2017 U.S. Dist. LEXIS 180265 ( 2nd Cir. 2017); Bethel, vs. Jenkins,  2019 U.S. Dist. LEXIS 29089 (6th Cir. 2019)).

17. [6]  Defendants named in this Count continue to enforce the censorship policies and practices complained of herein as of the date of this Complaint. Plaintiff  [are] is suffering irreparable harm as a result of Defendant's ongoing violations of [their] his Constitutional rights, and therefore Plaintiff [have] has no adequate remedy at law.  These violations are continuing and will continue until enjoined by this Court.

18. [7]  The censorship policies and practices complained of herein violate Plaintiff's right to receive information as guaranteed by the First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment to the United States Constitution.

19. [8]  Plaintiff  has an interest, protected by the First and Fourteenth Amendments to the United States Constitution.

20. [9]  Defendants named in this Count continue to enforce the censorship policies and practices complained of herein as of the date of this Complaint. Plaintiff [are] is suffering irreparable harm as a result of Defendant's ongoing violations of his Constitutional rights, and therefore Plaintiff has no adequate remedy at law.  These violations are continuing and will continue until enjoined by this Court.

21. [10] Defendants named in this Count's policies and practices complained of herein have been undertaken by the Defendants under the color of state law.

22. [11] Defendants THOMAS and BRADLEY have been the subject of legal action for the same conduct at SCC in the past (both the restriction of vendors and the unauthorized return of publications as detailed herein) which was settled in favor of the plaintiffs in that case (Prison Legal News v. Corrections Corporation of America, Case No. 2:09-cv-01831-PHX-ROS, in the U.S. District Court for the District of Arizona (2009)), and which clearly establish that Defendants THOMAS and BRADLEY are, or reasonable should be, aware of the wrongfulness of their actions.

23. [12] Defendants named in this Count's actions and inactions are motivated by evil motive and intent and are committed with reckless and callous indifference to Plaintiff's [and] rights as protected by the United States Constitution.

4.     **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff has suffered emotional distress, and an impaired exercise of his right to receive information under the First Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment of the United States Constitution.

5.     **Administrative Remedies:**
   a)   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                                                Yes
   b)   Did you submit a request for administrative relief on Count VIII?                    Yes
   c)   Did you appeal your request for relief on Count VIII to the highest level?          Yes

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I served the attached document by certified mail on the following:

Rachel Love
Daniel P. Struck
Courtney Lacaillade
STRUCK LOVE BOJANOWSKI & ACEDO
3100 West Ray Road, Suite 300
Chandler, Arizona  85226

*Attorneys for Defendants CoreCivic, Todd Thomas*
*Shawn Wead, Deborah Powell, Jody Bradley,*
*Norman Carrier, Mark Lopez, Ruth Newell,*
*Carla Robertson, and Juan Montanez.*

Danny Friddle
*Plaintiff Pro Se*